THE STATE, EX REL. MONTRIE NURSING HOME, INC., ET AL.,
APPELLANTS, *v.* AGGREY, DIR., ET AL., APPELLEES.

[Cite as State, ex rel. Montrie Nursing Home, v. Aggrey (1980),
63 Ohio St. 2d 121.]

(No. 79-1635—Decided July 16, 1980.)

122

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, Mr. Rankin M. Gibson* and *Mr. W. Joseph Strapp,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Thomas W. Hess, Mr. William J. McDonald* and *Mr. George E. Lord,* for appellees.

*Per Curiam.* Ordinarily, there are three prerequisites to the issuance of a writ of mandamus. As this court held in the

first paragraph of the syllabus in *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6:

"In order to grant a writ of mandamus, the court must find that relator has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law.* * *"

In addition, this court has held that in order for a relator to receive money due him by a state official, the amount recoverable must be established with certainty. *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234; *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190.

In this court's first *Montrie Nursing Home* decision, we held that there was no adequate remedy at law and that there was a clear legal duty on the part of respondents to pay some amount of money. Neither the Court of Appeals nor this court ruled on the amount to be paid or on relators' or the class members' right to the relief prayed for.

In stating that the writ was allowed, we intended for the Court of Appeals to issue the writ only after it had disposed of these two undecided issues. Unfortunately, the Court of Appeals did not resolve these issues, but rather granted an invalid writ ordering payment of unliquidated sums to the whole class of nursing homes.

The issues of prejudgment interest, proper enforcement, and attorney's fees can only be decided if there is a valid writ. In the absence of a valid writ, neither the Court of Appeals nor this court has jurisdiction over these issues. This court will examine issues of jurisdiction on its own initiative. *McHugh* v. *State* (1884), 42 Ohio St. 154.

As a consequence we vacate the lower court's orders on the issues appealed and remand the cause in order that the other issues which are prerequisites to the issuance of a valid writ be decided.

On remand, the Court of Appeals should consider that two issues were decided by this court in the earlier *Montrie Nursing Home* decision for the entire class of nursing homes providing medical services to indigents under the Medicaid programs. The issues decided were that there was no adequate remedy at law and that the state was under a clear legal duty

to make payments in accordance with Am. Sub. H. B. Nos. 155 and 1546 without the modifications made in fiscal policy Bulletins No. 4 and 7. The Court of Appeals should treat these issues as though they have been decided in a class action which was limited in scope pursuant to Civ. R. 23(C)(4).

The change in R. C. 5101.51 made by Am. Sub. H. B. No. 1546 did not affect the duty to reimburse costs under paragraph (B) of Am. Sub. H. B. No. 155, *supra.* The language added to R. C. 5101.51 limits payments for medical services, not reimbursements of the cost of property.

In our earlier decision we only held that there was a clear legal duty to make payments without the modifications in fiscal policy Bulletins No. 4 and 7. We did not rule on any other clear legal duty which respondents might have been under. If relators claim any other right to payments, the Court of Appeals must decide not only if relators are entitled to a definite amount of money, but also if there is a clear legal duty on the part of respondents to make such payments.

In any case, the Court of Appeals should initially determine if the issues before it are maintainable as a class action pursuant to Civ. R. 23(C)(1). The court can of course make any limitations which are appropriate pursuant to Civ. R. 23(C)(4). If the court finds that the issues can be decided in a class action, it should order that any required notice be sent.

The Court of Appeals should then decide if the named relators and any members of the class it has deemed properly before it have a clear legal right to a definite amount of money pursuant to respondents' duty to pay nursing homes in accordance with Am. Sub. H. B. Nos. 155 and 1546. If the court determines that such a right exists, it can issue a writ ordering payment of the amount due. Only when the court has reached this stage of the proceedings can it order payment of a reasonable amount of attorney's fees and interest, if such orders are required under the law.

*Orders vacated*
*and cause remanded.*

CELEBREZZE, C. J., HERBERT, W. BROWN and SWEENEY, JJ., concur.

LOCHER, J., concurs in the judgment.

P. BROWN and HOLMES, JJ., dissent.

PAUL W. BROWN, J., dissenting.   In the case of *State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* (1978), 54 Ohio St. 2d 394, this court allowed a writ of mandamus to compel appellees to pay nursing home providers according to mandatory rates set forth in Am. Sub. H. B. No. 155 of the 111th General Assembly. In that case I would have denied that writ for the argued reason that there was an adequate remedy at law.

After remand, on August 16, 1978, the Court of Appeals issued an order for appellees to make the payments to appellants according to a set schedule of rates. Thereafter, there were the usual bureaucratic delays occasioned in part by the complexity of an ill-conceived statutory scheme.

The appellants became impatient and moved for an order in the Court of Appeals for the agency to show cause why it was not in contempt. A contempt order was denied, the court finding that there had been no contemptuous conduct, but that in fact the delays were occasioned by the scheme, as stated, and also that delay was in part occasioned by a concomitant motion of the claimant's counsel for attorney fees of 15 to 30 percent out of $8.2 million payable to the more than 550 nursing home operators. Since such fee, if allowed, would have been payable out of the so-called fund, payment to the providers of the service had, of necessity, to be deferred until disposition of this claim. The court, finding no contemptuous conduct, conducted a hearing and granted attorney fees of $51,307 ($75 per hour, plus .5 percent of the fund which the action concerned). There is no claim that the court's failure to find the agency in contempt was an erroneous, appealable order. The appeal questions the adequacy of the attorney fee which was allowed by the Court of Appeals.

Appellants correctly point out that the rationale for the inherent equity power of a court to award attorney fees in a class action is to prevent unjust enrichment of those who have been benefited from class action litigation, but who have not actually contributed to the expense of litigation. See Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv. L. Rev. 1597; Annotation 38 A.L.R. 3d 1384. This court has adopted that philosophy in the award of *reasonable*

attorney fees in a class action. *Smith* v. *Kroeger* (1941), 138 Ohio St. 508.

Such an award of attorney fees has been analogized to the underlying reasons for allowing a contingent fee arrangement. The primary reason for such an arrangement is the risk factor involved when an attorney agrees to represent a person under such an agreement. In the instant action there does not appear to have been any real risk involved. The law was clear that the money was due the appellants.

It should be pointed out that although the parties stipulated this cause to be a class action, it has never been certified as one by a court. Whether it was a true class according to Civ. R. 23, is not an issue here. What is at issue is whether the fees granted by the Court of Appeals to the attorneys were "reasonable."

The Court of Appeals properly considered the knowledge, skill, and reputation of the attorneys, the complexity of the case, and the number of hours worked in setting the requested fee. The attorneys in this action had an agreement with a nursing home association, composed of about one-half of the nursing homes involved, to pay the attorneys if appellants lost. Thus, the attorneys were to be paid at least their hourly rate, win or lose. The Court of Appeals also determined that each nursing home provider should share proportionately in the costs of having these attorneys represent them. Thus, there is no unjust enrichment of any members of the class.

Since the Court of Appeals provided for a hearing regarding attorney fees, and determined a reasonable amount, I conclude that amount should not be disturbed. (See Judge Whiteside's dissent contending any attorney fees award here is unwarranted.)

There seems to me to be no reason for this court to remand the cause for reconsideration of the question of adequacy of the fee ordered, and there seems to be no other final order before us for review. In the event that there would have been further delays in payment or further unanswered questions as to unliquidated amounts due, an appropriate action could have been brought or the inherent power of the Court of Appeals could be invoked to compel enforcement of its orders.

*Wind* v. *State* (1921), 102 Ohio St. 62; *State* v. *Townley* (1902), 67 Ohio St. 21.

I would affirm the judgment of the Court of Appeals.

HOLMES, J., concurs in the foregoing dissenting opinion.