THE STATE, EX REL. SHADY ACRES NURSING HOME, INC., APPELLEE, *v.*
RHODES, GOVERNOR, ET AL., APPELLANTS.

[Cite as State, ex rel. Shady Acres Nursing Home, Inc., *v.* Rhodes (1983),
7 Ohio St. 3d 7.]

(No. 83-309—Decided November 2, 1983.)

*Lucas, Prendergast, Albright, Gibson, Newman & Gee Co., L.P.A.,* and *Mr. Rankin M. Gibson,* for appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Sheila P. Cooley,* for appellants.

*Per Curiam.* Essentially, this case presents this court with two issues: whether there was a full accord and satisfaction, thus disposing of the four issues supposedly resolved by the June 5, 1980 agreement; and whether the use of laws and regulations passed in 1977 to set reimbursement rates for 1978 was an unconstitutional retroactive application of law. This court concludes that there was a full accord and satisfaction and that there was no retroactive application of the law.

The question of accord and satisfaction is dealt with first because it eliminates the necessity of dealing individually with four of the six questions. Four elements must be present to have an accord and satisfaction: proper subject matter, competent parties, mutual assent, and consideration. 1 American Jurisprudence 2d 304, Accord and Satisfaction, Section 4. As an accord and satisfaction is the result of an agreement between the parties, it cannot be consummated unless the creditor accepts the lesser amount with the intention that it constitutes a settlement of the claim. *Warner Elevator Mfg. Co.* v. *Higbee* (1935), 53 Ohio App. 546 [7 O.O. 355].

In the present case, Shady Acres agreed to dismiss four issues in return for adjusted payment from the state. The ODPW agreed to pay $25,288 and to pay "cost of ownership" component as determined by the case of *State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* (1978), 54 Ohio St. 2d 394 [8 O.O.3d 401]. At that time, this figure was to be four dollars per diem per Medicaid bed. After the meeting between the parties, *State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* (1980), 63 Ohio St. 2d 121 [17 O.O.3d 74], was released, making it clear that a final decision had not been reached. At this point the ODPW, through the Attorney General, notified Shady Acres that the state could not pay monies out until a final judgment had been entered. Shady Acres' counsel responded that:

"My client will accept the proposal of a payment of $25,288.00 leaving the cost-of-ownership payment to be determined in the Montrie Nursing Home case."

Thus, the four dollar per diem sum was not paid at that time. However, Shady Acres cashed the warrant and retained the $25,288. Now Shady Acres contends that the state failed to execute a portion of its bargain, payment of the per diem rate. Thus, Shady Acres contends there was no accord and satisfaction as there was no acceptance of the $25,288 with the intention that it constitute satisfaction of the whole. Although the trial court specifically found an accord and satisfaction present, the court of appeals accepted Shady Acres' reasoning.

However, the law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis* v. *Kelly* (1875), 27 Ohio St. 567; 5 Ohio Jurisprudence

3d 198, Appellate Review, Section 604 and the cases cited therein. Moreover, if those findings are supported by some competent, credible evidence, they will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

While the court of appeals may have seen the facts differently, the trial court committed no error of law, there was competent, credible evidence supporting its findings, and those findings were not against the manifest weight of the evidence. Consequently, the determination of the trier of fact must stand; four of the six issues in the case were settled by a full accord and satisfaction between the parties and should not be considered by this court.[1]

The remaining points of the case concern an alleged retroactive application of law. Shady Acres seeks a writ of mandamus to compel the ODPW to make adjustments in its payments to Shady Acres. To obtain this writ Shady Acres must establish that: it has a clear legal right to the relief prayed for; the state is under a clear legal duty to perform the requested act; and there is no adequate remedy at law. *State, ex rel. Westchester,* v. *Bacon* (1980), 61 Ohio St. 2d 42 [15 O.O.3d 53]; *State, ex rel. Harris,* v. *Rhodes* (1978), 54 Ohio St. 2d 41 [8 O.O.3d 36]. Shady Acres contends that the ODPW violated its clear legal duty to reimburse on a reasonable cost-related basis when it employed a prospective system in computing the reimbursement rate for 1978 and when it imposed reimbursement ceilings on line items in Shady Acres' 1976 cost report.

This is basically a question of whether the ODPW employed the proper rate for 1978. Under the prospective system, data is taken from two years before the rate year in question. It is then adjusted for inflation and other factors and a final rate of payment is established before the year of payment begins. A retrospective system employs an up-front estimate to be followed by an audit at the end of the year. The state then either pays Medicaid providers more or receives excess monies back, depending on the results of the audit. The line item ceilings operate by limiting reimbursement to an amount incurred by the ninetieth percentile of those reported. If a nursing home's costs are equal to or less than those reported by ninety percent of the comparable providers they are declared reimbursible.

Section 17 of Am. Sub. S.B. No. 221 became effective on November 23, 1977 and specifically called for Medicaid reimbursement to providers on a "Prospective Reasonable Cost-Related Basis." (137 Ohio Laws, Part I, 729.) However, the base cost data for the 1978 rate was derived from 1976. At that time Am. Sub. H.B. No. 155 controlled, providing in Section 2 for reimbursement on a "reasonable cost related basis." (136 Ohio Laws, Part I, 1683.)

---

[1] It should be noted that this court has decided yet a third *Montrie* case, *State, ex rel. Montrie Nursing Home, Inc.,* v. *Creasy* (1983), 5 Ohio St. 3d 124. With its resolution Shady Acres has been paid its per diem cost of ownership component. Both sides now agree that this aspect of the case is moot.

Also, on December 30, 1977, the regulations providing for line item ceilings, Ohio Adm. Code 5101:3-3-17(B) and 5101:3-3-20(C), were promulgated. These ceilings, too, were applied to the 1976 cost report. Shady Acres believes that application of the prospective system and the line item ceilings for 1978 violated Section 28, Article II of the Ohio Constitution, which specifically prohibits retroactive legislation, since these rules were not in effect at the time the original cost reports were prepared. This argument is without merit.

A retroactive law is one that impairs rights that are vested or acquired under existing laws, or that creates a new obligation or duty or attaches a new disability with respect to transactions or considerations already past. *Weil* v. *Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 203 [22 O.O. 205]. The constitutional prohibition against retroactive laws " '* * * is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby.' " *Coca-Cola Bottling Corp.* v. *Lindley* (1978), 54 Ohio St. 2d 1, 6 [8 O.O.3d 1], quoting *Lakengren* v. *Kosydar* (1975), 44 Ohio St. 2d 199, 201 [73 O.O.2d 502].

Am. Sub. S.B. No. 221 went into effect on November 23, 1977. The rate at issue is the reimbursement rate for 1978. While a pre-1978 cost report was used as one basis for establishing the amount of reimbursement due, it is inescapable that Shady Acres' right to reimbursement did not vest until 1978. This was after the effective date of Am. Sub. S.B. No. 221. Shady Acres, as a Medicaid nursing home provider, could rely on that law, enacted in 1977, before it rendered services in 1978 and received its 1978 rate. Since there was no vested right to reimbursement for 1978 until 1978, after Am. Sub. S.B. No. 221 became effective, there was no vested right to be retroactively impaired. Thus, the court of appeals was in error when it held that application of the prospective system using base data from an earlier year was an unconstitutional retroactive application of the law. The court of appeals' determination of the line item ceiling question was also erroneous for the same reasons.

This court has considered Shady Acres' further contentions that the ODPW was without authority to promulgate rules regarding line item ceilings and that these ceilings are unreasonable. These arguments have no merit and do not warrant further consideration.

Therefore, this court holds that there was a full accord and satisfaction, disposing of four of the issues in this case, and that appellee, Shady Acres, is not entitled to a writ of mandamus on the remaining two issues. For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN, and J. P. CELEBREZZE, JJ., concur.