SUTTON, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES; HECKETT, DIVISION OF HARSCO CORPORATION, APPELLANT.

(No. 3428—Decided November 19, 1984.)

*Debra Kay Witten,* for appellee Barbara Sutton.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Lee M. Smith,* for appellees Industrial Commission et al.

*Vorys, Sater, Seymour & Pease, Thomas M. Taggart* and *Carl D. Smallwood,* for appellant.

DAHLING, J. This is an appeal from a judgment of the common pleas court in which, after a trial by jury, judgment was rendered ordering that plaintiff-appellee may participate in the Workers' Compensation Fund of Ohio. Also, plain-tiff's attorney was awarded $1,500 in attorney fees, and defendant-appellant was ordered to pay costs. We affirm.

On July 14, 1979, plaintiff-appellee's (Barbara Sutton's) husband (Billy H. Sutton) suffered a fractured left femur following a fall at his place of employment and in the course of his employment duties. On July 15, 1979, Sutton underwent corrective surgery to repair the leg fracture, and on July 26, 1979, he was discharged from the hospital. He returned home but remained under doctor's care during his convalescence.

On October 22, 1979, Sutton was returned to the hospital for additional surgery as the injury was failing to heal properly. On October 25, 1979, a second operation was performed and post-surgery indications were very positive. However, on October 31, 1979, Sutton suddenly became ill and died a few hours later. The doctors indicated that the cause of death was reportedly "cardiogenic shock, cardiac arrest—cause undetermined."

On January 12, 1981, the Court of Common Pleas of Trumbull County entertained an appeal filed by defendant-appellant, Heckett, Division of Harsco Corporation, alleging that the final order declaring that appellee Sutton was entitled to participate in the Workers' Compensation Fund was in error.

On February 27 and 28, 1984, a jury trial was held on the matter, which resulted in a verdict in favor of appellee Sutton. Appellant moved for judgment notwithstanding the verdict, or in the alternative, the granting of a new trial. On April 18, 1984, these motions were denied. This appeal followed.

Assignment of Error Nos. I and IV

"I. The trial court erred in overruling defendant-appellant's motion for a directed verdict at the conclusion of plaintiff's case and in overruling defendant-appellant's motion for judgment notwithstanding the verdict."

"IV. The trial court erred in overruling defendant-appellant's motion for a new trial."

These assignments of error will be discussed together. They are without merit.

Appellant's primary contention is that the trial court erred in failing to grant his motion for a new trial, as the answers given by the jury to special jury interrogatories were contradictory to the general jury verdict. The record reflects that the jury found for appellee Sutton on the general verdict and responded to the special jury interrogatories in the following manner:

Interrogatory No. 1

"Q. Do you find by a preponderance of the evidence, that the death of Mr. Billy Sutton on October 31, 1979, was directly and proximately caused by an injury which occurred during the course of his employment on July 14, 1979?

"A. Yes."

Interrogatory No. 2

"Q. Do you find, by a preponderance of the evidence, that Mr. Bill [sic] Sutton died on October 31, 1979, of 'cardiogenic shock with cardiac arrest'?

"A. No."

Interrogatory No. 3

"Q. If your answer to Interrogatory No. 2 is 'yes', do you find by a preponderance of the evidence that the direct and proximate cause of this condition 'cardiogenic shock with cardiac arrest' was the injury received on July 14, 1979?

"A. No."

The apparent inconsistency can be resolved by a review of the testimony of Dr. Paloski. The doctor testified:

"Q. Okay, Doctor, based upon your review of those reports that you noted, did you form an opinion within reasonable medical certainty or probability that the injuries Mr. Sutton incurred in July of 1979 were related to his death in October of 1979?

"A. It was my opinion based on the information I had that there was a *very high probability,* or *high* cause that the fractured femur did cause a fat embolus, and *did cause the death of Mr. Sutton.* [Emphasis added.]

"* * *

"Q. Doctor, let me ask you a hypothetical situation, and at the end of it I'll ask you to state an opinion. Assume that there's a 60 year old man and while at work on July 14, 1979, he falls approximately seven feet and is injured and is taken to the Trumbull Memorial Hospital. There's an admitting diagnosis of a fractured left femur, hypertension and emphysema.

"On July 14, 1979, this person has a surgical procedure to repair the fractured femur which involved the fixation of a Jewett hip nail.

"On October 25, 1979, he is readmitted because of a pseudoarthritis of the subtrochanteric fracture of the left hip, and a second surgical procedure is performed.

"On October 31, 1979, while this man is in the physical therapy department he develops an unexplained shock and despite resuscitation measures he expires on October 31, 1979.

"An autopsy is performed with a pathological diagnosis of cardiogenic shock with cardiac arrest, cause unexplained, and among other findings there is further evidence of pulmonary fat embolism, emphysema and hypertension.

"Based on these facts, Doctor, do you have an opinion with reasonable medical certainty or probability whether the findings of pulmonary fat embolism and cardiogenic shock with cardiac arrest would have occurred had Mr. Sutton not been injured on July 14, 1979?

"A. It's my opinion that the facts as stated, that Mr. Sutton, a 60 year old gentleman with the incident as described, it is in all likelihood that *due to his surgeries that he could have developed a cardiogenic shock and fat*

*embolism which ultimately caused his demise.* I doubt whether if he had not been involved in the industrial accident, whether he would have died from cardiogenic shock, etc. * * *"

The jury had before it an opportunity to choose between the cause of death as pulmonary fat embolus or cardiogenic shock with cardiac arrest. The answers to the interrogatories only suggest that the opinion evidence related to pulmonary fat embolus was more persuasive than the opinion evidence related to cardiogenic shock.

Appellant also contends that the answers to the interrogatories are against the manifest weight of the evidence. Therefore, a new trial should have been granted.

As noted above, there was sufficient evidence to support the finding of the jury as well as a rational explanation of the alleged inconsistency between the special jury interrogatories.

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis* v. *Kelly* (1875), 27 Ohio St. 567; *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]; *State, ex rel. Shady Acres Nursing Home, Inc., supra.*" Kinney v. *Mathias* (1984), 10 Ohio St. 3d 72, 73-74.

Additionally, there was proof that the industrial injury might have accelerated a medical condition which, due to age factors, led to the demise of the appellee's husband. The record reflects:

"A.   * * * They are asking my opinion as to causal relationship of the fractured femur to the gentleman's death.
"* * *

"A.   It was my opinion based on the information I had that there was a very high probability, or high cause that the fractured femur did cause a fat embolus, and did cause the death of Mr. Sutton.
"* * *

"A.   * * * My opinion is that * * * if there is [sic] no injury, there would be [sic] no death.

"Q.   Do you have an opinion with reasonable medical certainty what roll [sic] the broken femur played on his death?

"A.   It played a direct cause for his eventual death.
"* * *

"A.   The death of Billy Sutton had —it was definitely related to the initial injury * * *."

According to *Senvisky* v. *Truscon Steel Div. of Republic Steel Corp.* (1959), 168 Ohio St. 523 [7 O.O.2d 390], paragraph two of the syllabus, these facts establish an additional ground supporting the jury verdict:

"In such case, proof that the death of an employee from disease was accelerated as the result of an accidental injury in the course of and arising out of employment must include evidence by competent medical witnesses that the injury directly and proximately accelerated the death by a substantial period of time."

Appellant has failed to demonstrate either error.

Assignments of Error Nos. II and III

"II.   The trial court erred to the prejudice of defendant-appellant in admitting over its objection the opinion testimony of Dr. Paloski because Dr. Paloski's testimony was based on the opinions of others and on facts not admitted into evidence.

"III.   The trial court erred to the prejudice of defendant-appellant in admitting over its objection the opinion testimony of Drs. Bustamante and Paloski because their testimony was *not*

based on a direct and proximate causal relationship."

These assignments of error will be discussed together. They are without merit.

These assignments of error relate to the admission of opinion testimony of Drs. Bustamante and Paloski.

Appellant contends that the court erred in the admission of Dr. Paloski's testimony because his "opinion" was based on the opinions of other physicians and medical reports not admitted into evidence. This contention is not supported in fact or law. The record reflects that the "records" referred to by Dr. Paloski were admitted into evidence at trial. The exhibits excluded by the trial court did not enter into the "opinion making" procedure used by Dr. Paloski nor do they contain any new or conflicting information as compared with opinions expressed by doctors whose reports were admitted. The Ohio law on admission of this type of testimony is found in the syllabus of Zelenka v. Indus. Comm. (1956), 165 Ohio St. 587 [60 O.O. 524], where the court stated:

"An expert witness may not express his opinion based upon evidence which he has heard or read on the assumption that the facts supported thereby are true, where such evidence is voluminous, complicated or conflicting or consists of the opinions, inferences and conclusions of other witnesses."

There is much dispute as to whether this approach is the preferred approach, but as the law stands in Ohio, this is the approach. However, an allowance has been made whereby evidence of this nature may be admitted, e.g., when a hypothetical question has been posed specifying only such proven facts as could be the basis of an expert opinion, the testimony will be allowed.

The record reflects, in the transcript of the deposition of Dr. Paloski, that such a question was posed by counsel for appellee Sutton. See pages 344-345, supra.

On these facts, the trial court did not err in admitting the opinion testimony of Dr. Paloski.

Essentially, the point raised by appellant in the third assignment of error is whether the testimony of the two doctors addressed the issue of the direct and proximate relationship of the injury of the decedent to his ultimate demise. However, appellant has failed to demonstrate any error committed by the trial court in the admission of this testimony.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK, P.J., and FORD, J., concur.