PEOPLES et al., Appellees,

v.

CITY OF WILLOUGHBY, Appellant.

[Cite as *Peoples v. Willoughby* (1990), 70 Ohio App.3d 848.]

Court of Appeals of Ohio,
Lake County.

No. 89–L–14–066.

Decided Dec. 31, 1990.

*James N. Krivok,* for appellees.

*Robert G. Hurt,* for appellant.

HENDRICKSON, Judge.

On November 29, 1979, as Richard A. Baker, a patrolman employed by appellant, city of Willoughby, was responding to an emergency call at the Great Lakes Commerce Bank, his cruiser collided with a Subaru operated by appellee, Linda Peoples. The collision occurred at the intersection of Wilson, Park and Euclid Avenues in the city of Willoughby. Linda Peoples ("Peoples") and her two daughters, appellees Amy and Aubrey Peoples, were among the injured.

This is an action for damages for personal injuries and the jury returned a verdict in favor of each appellee.

At trial, there was evidence that there was a light snow and the temperature was near freezing, but the streets were not slippery. As the Subaru approached the intersection while westbound on Wilson Avenue, the light was green and Peoples proceeded to make a left turn. There are two lanes of traffic going each way on Euclid Avenue and a northbound truck, which had stopped in the left-hand northbound lane for the red light, obstructed Peoples' view of the southbound lanes of Euclid Avenue as she entered the intersection. Also, there was evidence that prior to entering the intersection, Peoples' view to her left was obstructed by a hedge.

In the meantime, Baker was proceeding northbound on Euclid Avenue at a high rate of speed in a twenty-five m.p.h. zone with his overhead flashers on. Traffic was moderate to heavy. He was operating the siren manually, and as he approached the intersection, the northbound lanes were blocked by the truck and other vehicles. Consequently, Baker proceeded to the intersection in one of the southbound lanes. As he went left of center, his siren was no longer activated, and as he entered the intersection at a speed of about forty

m.p.h., he had a red light. Baker did not see the Subaru until he was in the intersection. Peoples did not hear the sirens nor did she see the cruiser until she entered the intersection. Baker applied his brakes and skidded sixty-four feet prior to the impact, which broke the Subaru open in the middle of the driver's side.

Baker admitted that there are different levels of emergency calls and that the bank's alarm was not reliable. After the accident, Baker stated to a detective that he was not in any hurry to get to the bank.

This is the third time this case has been before this court. In *Adams v. Peoples* (Mar. 30, 1984), Lake App. Nos. 9–268, 9–269, 9–270 and 9–271, unreported, 1984 WL 6291, this court reversed the judgment of the trial court which granted summary judgment to the city of Willoughby as to Baker's alleged willful and wanton misconduct. That decision was affirmed by the Ohio Supreme Court in *Adams v. Peoples* (1985), 18 Ohio St.3d 140, 18 OBR 200, 480 N.E.2d 428.

On remand, the trial court gave an erroneous jury instruction and this court reversed and remanded again. See *Adams v. Peoples* (Oct. 7, 1988), Lake App. Nos. 13–022 and 13–023, unreported, 1988 WL 105573. The case was again tried, and on April 11, 1989, the jury returned a verdict in favor of appellees. This appeal is from that verdict, and appellant assigns as error the following:

"The verdict of the jury that the City of Willoughby was liable for the willful or wanton misconduct of its police officer was contrary to the manifest weight of the evidence."

The question in this case is whether there is competent, credible evidence to support the finding of the jury that Baker was guilty of either willful or wanton misconduct. Whether misconduct is willful or wanton is a jury question. In other words, could the jury have reasonably concluded that Baker's misconduct was willful and wanton?

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis v. Kelly* (1875), 27 Ohio St. 567; *State, ex rel. Shady Acres Nursing Home, Inc., v. Rhodes* (1983) 7 Ohio St.3d 7 [7 OBR 318, 455 N.E.2d 489]. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]; *State, ex rel. Shady Acres Nursing Home, Inc., supra.*" *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73–74, 10 OBR 361, 362, 461 N.E.2d 901, 902–903.

■ Furthermore, the verdict of a jury will not be reversed on the weight of the evidence unless all three appellate judges agree. See Section 3, Article IV, Ohio Constitution.

In order to determine whether there is competent, credible evidence to support the verdict of the jury, it is necessary to define "willful" and "wanton."

*Tighe v. Diamond* (1948), 149 Ohio St. 520, 37 O.O. 243, 80 N.E.2d 122, clearly enunciates the distinctions between "willful" and "wanton" misconduct. *Tighe* was an action for damages for personal injuries in a motor vehicle accident under the guest statute. In making its determination, the court examined the distinction between "wanton" and "willful" misconduct.

" 'Wanton misconduct' comprehends an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct. * * * Wanton misconduct is positive in nature while mere negligence is naturally negative in character.

" * * * 'Wilful misconduct' is something more than negligence. 'Wilful misconduct' imports a more positive mental condition prompting an act than does the term 'wanton misconduct.' 'Wilful misconduct' implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * * The word 'wilful,' used in the phrase, 'wilful misconduct,' implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act, such as operating an automobile, was intentionally done. * * * The intention relates to the commission of wrongful conduct, independent of the intent to use certain means with which to carry out such conduct.

"In order that one may be guilty of 'wilful misconduct,' an actual intention to injure need not be shown. * * * " (Citations omitted.) *Tighe*, at 526–527, 37 O.O. at 246, 80 N.E.2d at 126–127.

■ The test for establishing wanton misconduct was set forth in *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367. This test basically has two components: (1) a failure of a driver of an automobile "to exercise any care whatsoever toward those to whom he owes a duty," and (2)

"his failure occurs under circumstances in which there is great probability that harm will result." *Id.* at the syllabus.

In *Hawkins, supra,* Ivy left his stalled grey automobile in a traffic lane of a four-lane divided highway at night without lights and without activating his flashers. Another vehicle, driven by Hawkins, collided with the rear end of the parked car and Hawkins was injured. Hawkins brought an action for damages against Ivy and the trial court granted Ivy's motion for summary judgment. The court of appeals affirmed the decision of the trial court, but the Ohio Supreme Court reversed the decision of the court of appeals. In doing so, the court said that if a jury determined that Ivy's "behavior and the surrounding circumstances were as described, a finding of wanton misconduct would be appropriate * * *." *Id.* at 117, 4 O.O.3d at 245, 363 N.E.2d at 369.

In *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 528 N.E.2d 578, the court of appeals ruled that the totality of the circumstances must be considered when determining whether a patrolman's action in responding to an emergency call was wanton misconduct. Specifically, the officer in *Reynolds* continued to accelerate through a red traffic light, but did have his siren sounding and his lights flashing. The trial court, in granting the motion by the city for a directed verdict, held that the police officer's use of his lights and siren negated the claim of willful and wanton misconduct as a matter of law. The court of appeals reversed. In doing so, the court held that:

"Unquestionably, the use of lights and a siren is a significant factor to be considered in conjunction with all other circumstances, but the potential absurdity of a steadfast rule denying liability when such devices are used is manifest.

"* * *

"The term 'wilful and wanton misconduct' connotes behavior demonstrating a deliberate or reckless disregard for the safety of others, but because the line between such misconduct and ordinary negligence is sometimes a fine one depending on the particular facts of a case, it is generally recognized that such issue is for the jury to decide." (Citations omitted.) *Reynolds,* at 127, 528 N.E.2d at 582.

When applying the above case law to the present case, it becomes clear that there is competent, credible evidence to support the verdict of the jury.

R.C. 4511.03 states:

"Emergency vehicles to proceed cautiously past red or stop signal.

"The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed

cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

Baker admitted that despite the wet, snowy, rainy weather and the moderate to heavy traffic, he decided two-tenths of a mile from the intersection that he would drive on the wrong side of the road. In addition, he reached a speed of at least forty m.p.h. and did not touch his brakes as he started through the intersection.

Clearly, under R.C. 4511.03, Baker had a duty to slow down and proceed cautiously through the intersection. He was aware of this duty. Yet, he proceeded through the intersection at such a speed that he skidded sixty-four feet before hitting the appellees' vehicle with such force that it nearly split the vehicle in two.

Furthermore, he admitted that while going through this congested intersection, he did not sound his siren, despite his police training to the contrary. Under the above circumstances, it is reasonable to conclude that Baker intentionally disregarded his duties.

The record also supports the conclusion that Baker's misconduct was wanton. He totally disregarded his duty and, under the circumstances, there was a great probability that harm would result. *Hawkins, supra.* Although a large truck blocked the views of both Baker and appellee Linda Peoples, Baker admitted he did not have his siren sounding as he entered the intersection. Two witnesses, Georgianne Adams and Linda Peoples, testified that they did not hear the siren at all.

Whether a person's actions are willful or wanton misconduct is a question of fact and, therefore, is a jury issue. See *Matkovich v. Penn Central* (1982), 69 Ohio St.2d 210, 214, 23 O.O.3d 224, 226–227, 431 N.E.2d 652, 655; *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 127, 528 N.E.2d 578, 582.

Given the facts of this case, reasonable minds could have found Baker's action willful or wanton misconduct. A reviewing court will not reverse a trial court finding unless there is not competent, credible evidence to support the judgment. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. This clearly is not the case here.

*Judgment affirmed.*

Cox, P.J., and Basinger, J., concur.

William R. Hendrickson, J., of the Twelfth Appellate District, sitting by assignment.

854

EDWARD A. COX, P.J., of the Seventh Appellate District, sitting by assignment.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.