106 F.3d 401
 Pens. Plan Guide P 23932M
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ray OLEJNICZAK, Duane Krueger, Michael Lamphier, and Harry
Rorarius, Jr., Plaintiffs-Appellants,
v.
INDUSTRIAL MACHINE & DIE CO., INC.; James Liptack,
President Industrial Machine & Die Company, Inc.,
Individually and as Trustee of the Local No. 57 I.A.M.
Pension Fund; Fred Hall; Richard Pack; and Local D.S. 160
Pension Plan, Defendants-Appellees.
 No. 95-4292, 96-3251.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1997.
 
 Before: GUY, RYAN, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs, former employees of defendant Industrial Machine & Die Company, appeal the district court's grant of summary judgment to defendants[1] on all claims. Plaintiffs further appeal the denial of their motion for partial summary judgment under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., on their claim for delinquent contributions to the employer's pension plan. See id. at § 1145. The district court found that the employer had established a pension plan. It further concluded, however, that agreements between the employer and the union settling claims for unpaid contributions, in which agreements plaintiffs had acquiesced, barred not only plaintiffs' delinquent contributions claim but also their breach of the collective bargaining agreement claim.
 
 
 2
 After reviewing the record, we conclude that plaintiffs' motion for partial summary judgment was properly denied. For the period in dispute there was no ERISA plan "established or maintained" as that term is defined under the Act.
 
 
 3
 We reverse the court's grant of summary judgment to defendants on plaintiffs' breach of collective bargaining agreement claim, however, because we conclude a genuine issue of material fact exists as to whether Industrial Machine & Die breached the agreement as to retirement benefits for the period January 1, 1992, to the date of plaintiffs' termination on November 7, 1992. In all other respects we affirm.
 
 I.
 
 4
 Plaintiffs were employees of Industrial Machine & Die Company, a die forging company located in Moline, Ohio. The company's plant is located in Walbridge, Ohio. The plaintiffs were members of the International Association of Machinists Union (IAM).
 
 
 5
 As part of their compensation, plaintiffs were provided retirement benefits. The company had been contributing to a retirement plan that was administered by an insurance company, but the employees decided to terminate that plan. The company was then required under the existing collective bargaining agreement to initiate another retirement program. The collective bargaining agreement (CBA) effective from July 1, 1990, to June 30, 1993, provided in pertinent part as follows:
 
 
 6
 The company shall continue to contribute, as stated below, per week to a jointly administered retirement plan for each bargaining unit employee on the active payroll. Learners must have six (6) months on the company payroll to qualify. Their payment shall start with the first week after the six (6) month qualifying period.
 
 
 7
 Pension Plan
 1st Year 2nd Year 3rd Year
 -------- -------- --------
 $31.00 $34.00 $37.00
 
 
 8
 (App. 31.)
 
 
 9
 On November 19, 1990, the union and the company signed an agreement requiring the company to make contributions to Plan B of the IAM Pension Fund (the Fund). In the agreement, which was appended to the 1990-1993 CBA, the parties incorporated by reference the IAM pension fund trust agreement and rules adopted by the trustees in establishing and administering the trust and plan.
 
 
 10
 A few months later, on April 11, 1991, the company received a provisional acceptance letter from the Fund. The letter set forth the agreed upon rates of contribution, requested that the acceptance letter be posted to inform employees, and referred to summary plan descriptions that the Fund had mailed to all employees. The letter plainly stated, however, that "[u]nder the rules of the Pension Plan your Company does not become a Contributing Employer until you begin contributions to the Fund." Id. at 222.
 
 
 11
 The company did not make timely contributions. On June 4, 1991, the Fund informed the company that if payment was not received in full by June 17, 1991, "the company and employees' participation will be revoked." Id. at 223.
 
 
 12
 In response, the company remitted partial payment. The Fund acknowledged receipt of the contributions by letter dated July 26, 1991, but reminded the company that it would not become a contributing employer until it paid its contributions in full. A copy of the letter was sent to all covered employees.
 
 
 13
 Due to financial difficulties, the company was unable to comply in full. On October 16, 1991, the Fund notified the company and its employees that the April 11, 1991, notice of acceptance was rescinded, and employees would not be entitled to credited service under the plan. The company, in further correspondence with the Fund, attempted to leave open the option of becoming a contributing employer. The company ultimately informed the Fund, however, that it could not pay its contributions in full and requested a refund of the amounts previously submitted, which had been held in escrow pending full remittance. Pursuant to the company's request, on March 1, 1993, the Fund refunded $56,910. Prior to the refund being made, however, the plaintiffs were laid-off on November 7, 1992.
 
 
 14
 On March 8, 1993, the union and the company signed a letter agreement, which was sent to the company's employees including plaintiffs as former employees, providing for disbursement of the escrowed money. Prior to his discharge, plaintiff Olejniczak, who was a former vice president of the union and the current recording secretary at the time of his departure from the company, participated in these negotiations between the union and the company regarding disposition of the returned funds. The agreement provided that "both parties agree the checks submitted by Industrial Machine & Die and made payable to each individual employee satisfies the pension agreement according to the Economic & Bargaining Agreement signed on July 1, 1990, for the periods of September 1990 through December 31, 1991." (App. 93.) The agreement further provided that the funds to be distributed to the employees
 
 
 15
 are for contribution funds paid to the I.A.M. National Pension Fund for the employees' pension plan beginning September, 1990 and paid through December 31, 1991.
 
 
 16
 The employees also agree they fully understand these funds were set aside into an escrow account instead of being contributed into a qualified pension plan because of financial difficulties that are occurring at Industrial Machine & Die.
 
 
 17
 Id. Each of the plaintiffs was listed as a recipient in the agreement and received a copy of the agreement along with a check for the amount specified in the agreement. Plaintiffs all cashed their checks.
 
 
 18
 In the next collective bargaining agreement between the union and the company, representing the one-year period from July 1, 1993, to June 30, 1994, no provision was made for retirement benefits. The CBA did include, however, "Exhibit A," which addressed the retirement plan contained in the 1990-1993 CBA. In that exhibit, the company acknowledged that "if a qualified retirement plan could have been maintained at IAM," id. at 101, the company would have been required to contribute amounts as specified in the CBA for each bargaining unit employee for the period from January 1, 1992 to June 30, 1993. The exhibit goes on to state "[i]n this regard, the company shall contribute to each bargaining unit employee who [was] on the active payroll in 1992 and 1993 such funds, in the form of a bonus, when the company's current extreme cash flow difficulties permits such funds to be distributed." Id.
 
 
 19
 In the next CBA, for the three-year period from July 1, 1994, to June 30, 1997, the company agreed that these amounts would be paid "within the life of" that agreement. Id. at 103. On February 23, 1995, each of the plaintiffs was sent a check for these amounts. Plaintiffs have not cashed these checks.
 
 
 20
 Plaintiffs, upset that the company had given itself four years to repay retirement benefits for the second period of default, January 1, 1992, to November 1992, when plaintiffs were laid off, brought suit against the company and the plan in late 1994. Plaintiffs alleged various violations of ERISA and included a claim for breach of the collective bargaining agreement. Defendants filed a motion for summary judgment on all grounds, which the court granted. The court denied plaintiffs' motion for partial summary judgment on its claims of delinquent contributions under 29 U.S.C. § 1145 and failure to pay benefits under 29 U.S.C. § 1056(a). Plaintiffs now appeal.
 
 II.
 
 21
 On appeal, plaintiffs claim that the district court erred (1) in granting summary judgment to defendants when a genuine issue of material fact existed as to whether plaintiffs acquiesced in the agreements between the employer and union disposing of retirement benefits under the 1990-1993 CBA; and (2) in denying plaintiffs' motion for partial summary judgment on delinquent contributions when defendants' affirmative defense of accord and satisfaction (a) was not supported by consideration (b) did not reflect mutual assent and (c) the agreement reflecting the accord and satisfaction was unconscionable.
 
 A. Plaintiffs' ERISA Claim
 
 22
 We first consider whether the district court erred in denying plaintiffs' delinquent contributions claim. The court found that while an ERISA plan had been established and therefore ERISA applied in this case, plaintiffs had "availed themselves of the agreements reached regarding the nonpayment of pension contributions and, thus, are bound by these agreements." (App. 331.)
 
 Section 515 of ERISA provides as follows:
 
 23
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 24
 29 U.S.C. § 1145.
 
 
 25
 The obligation "to make contributions to a multiemployer plan" presupposes that a plan is in existence. See 29 U.S.C. § 1002(2)(A) (pension plan means any plan "established or maintained" by an employer). The Eleventh Circuit, in Donovan v. Dillingham, 688 F.2d 1367 (1982) (en banc), provided as follows:
 
 
 26
 In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.
 
 
 27
 Id. at 1373. This circuit adopted the Dillingham approach for determining whether an employer has established an employee benefit plan in Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 550 (6th Cir.1989).
 
 
 28
 In this case, applying these standards the district court found that the company had established a plan. It relied on the company's November 1990 agreement to be bound by the Fund's trust agreement. It further relied on the distribution of summary plan descriptions, concluding that "a reasonable person, on receiving the SPD [summary plan description], would believe that a plan was established" (app. 331). Finally, the court noted that the employees did not learn that the company failed to make all of the required contributions until July 1991.
 
 
 29
 Other facts in the record, however, suggest that the plan had not been established. For example, the April 11, 1991, acceptance letter from the Fund, which was to be posted for the employees, made plain that the employer would not become a contributing employer until it began contributions to the Fund.
 
 
 30
 Moreover, during the time period for which plaintiffs seek delinquent contributions, from January 1, 1992, until their date of departure eleven months later, it was clear that no plan had been established. In July 1991 all employees received the letter from the Fund indicating that the company had not been accepted as a contributing employer. Indeed, during that same time period plaintiff Olejniczak was participating in negotiations for the return of the amounts already credited by the Fund toward the employer's initial contribution. In short, it would have been unreasonable for an employee to conclude that a plan had been established.[2] Therefore, we disagree with the district court's conclusion that under the circumstances presented here a plan had been established and that ERISA applied to plaintiffs' claim for delinquent contributions. We nevertheless affirm the result, however, based on our conclusion that no plan was established, and therefore ERISA does not provide plaintiffs with a cause of action.[3]
 
 
 31
 B. Defendants' Affirmative Defense of Accord and Satisfaction
 
 
 32
 Plaintiffs contend the district court erred in granting summary judgment to defendants on plaintiffs' collective bargaining agreement claims since the agreements resolving the retirement benefits: (1) were not supported by consideration, (2) did not reflect mutual assent, and (3) were unconscionable. Although we reject plaintiffs' arguments as to points (1) and (3), we find that a genuine issue of material fact does remain as to whether plaintiffs acquiesced as to the second default period and reverse and remand on this issue.[4]
 
 
 33
 The affirmative defense of accord and satisfaction under Ohio law consists of four elements: (1) proper subject matter, (2) competent parties, (3) mutual assent, and (4) consideration. See, e.g., State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes, 455 N.E.2d 489, 490 (Ohio 1983).
 
 
 34
 In light of plaintiffs' arguments on appeal, we address whether two of these elements--consideration and mutual assent--have been shown.[5] Plaintiff argues that no consideration has been shown since the company had a pre-existing duty to make the contributions. The employer did not, however, have an obligation to make direct payments to employees before benefits were to be paid, and, therefore, we reject this contention.
 
 
 35
 Plaintiffs also argue there has been no mutual assent of the parties to settle plaintiffs' benefit claims. The record shows that the employer made two payments: (1) as a result of the March 8, 1993, agreement and (2) as a result of agreements contained in the collective bargaining agreements for the periods July 1, 1993, through June 30, 1997. As to whether plaintiffs acquiesced in the first agreement, the district court determined that plaintiffs "[i]n availing themselves of the benefit of the agreement reached between the union and the Company, this Court concludes that plaintiffs acquiesced to their representation by the union in this matter." (App. 334.) The court continues, without more, however, to conclude that "[u]nder the facts of this case, it would make no sense to find that plaintiffs acquiesced to such representation with respect to part of the pension contributions but not with respect to the remaining contributions to be reimbursed." Id. We find the court's conclusion supported by the record as to the first agreement but not as to the second agreement. As to the second agreement, we conclude a genuine issue of material fact remains as to whether the plaintiffs acquiesced.
 
 
 36
 The first agreement clearly delineated the period covered by the agreement "for the periods of September, 1990 through December 31, 1991." Id. at 93. The record further shows that plaintiffs were aware of the negotiations regarding these amounts, which had begun prior to their termination, and that plaintiffs in fact cashed the checks distributing the settlement amounts for this period. In contrast, we are unable to conclude that plaintiffs acceded to the subsequent settlement pertaining to the 1992-1993 time period. None of the plaintiffs were employed by the company at the time these subsequent agreements were made. More importantly, there is nothing in the record to suggest that any of them had been involved in their negotiation. Plaintiffs did not cash the checks provided by the company in 1995. Moreover, the terms of the agreement varied from that of the March 8, 1993, agreement. There was a considerable lag time between the time the company's obligation accrued and the time it paid out in settlement of that obligation. Therefore, plaintiffs' argument that a genuine issue of material fact remains as to whether mutual assent has been shown as to the default period beginning on January 1, 1992, is meritorious, and defendants were not entitled to summary judgment on this issue.
 
 
 37
 Finally, plaintiffs aver that all the agreements are unenforceable because they are unconscionable. It is contended that the agreements sacrifice the interests of plaintiffs as former employees in obtaining retirement benefits as soon as possible in favor of current employees, whose interests in retirement benefits are outweighed by their interest in continuing employment. This argument obviously fails as to the March 8, 1993, agreement since all employees received payment immediately upon the return of the escrowed contributions from the Fund. We need not address this argument as to the second time period, since we are reversing the grant of summary judgment as to that period of time.
 
 
 38
 In sum, we conclude that plaintiffs do not have a claim under ERISA for delinquent contributions against the employer since the record fails to show that an ERISA plan was established or maintained.[6] On plaintiffs' breach of collective bargaining agreement claim, a genuine issue of material fact remains as to whether defendant breached the agreement as to retirement benefits for the period January 1, 1992, to the date of plaintiffs' termination on November 7, 1992.
 
 
 39
 AFFIRMED in part, REVERSED and REMANDED in part, for further proceedings consistent with this opinion.
 
 
 
 [1]
 Plaintiffs also sued the company's president, James Liptack, two other individuals and Local D.S. 160 Pension Plan
 
 
 [2]
 Evidence that a plan was established for that time period is further negated, moreover, by the absence of evidence in the record that the employer sought to comply with ERISA's complex system for plan withdrawal. See 29 U.S.C. § 1381 et seq
 
 
 [3]
 Even if a plan had been established for the initial default period from September 1, 1990, to December 31, 1991, we would agree with the district court's conclusion that plaintiffs settled their claims for any amounts thereunder
 
 
 [4]
 Having rejected plaintiffs' claim under § 1145, the question of acquiescence is only pertinent on remand as to plaintiffs' breach of collective bargaining agreement claim
 
 
 [5]
 Defendants argue that plaintiffs are precluded from raising these arguments since they did not raise the issue of accord and satisfaction below. Accord and satisfaction is an affirmative defense on which defendant has the burden of proof. Therefore we do not find this argument persuasive
 
 
 [6]
 Under this disposition we need not decide and express no opinion as to whether plaintiffs had standing under the circumstances to bring an action to recover delinquent contributions