JOURNAL ENTRY and OPINION
This is an appeal from an order of Judge Ronald Suster that granted summary judgment to the appellees, City of Cleveland and its employees Christian Flores and Chad Thompson (collectively, "City"), and dismissed appellant Blandine Bostic's personal injury claim. Bostic was thrown from her seat when the City's ambulance made a sudden stop, and contends it was error to find the City immune from liability for her injuries. The City counters that the ambulance was on an "emergency call" as defined in R.C. 2744.01(A), and that liability would attach only if the employees engaged in willful or wanton misconduct, and that no such showing could be made. Bostic claims summary judgment was inappropriate because whether the ambulance was on an "emergency call" was an issue for the jury, as was whether it was willful and wanton misconduct to knowingly operate an ambulance without working seatbelts. We affirm.
On September 23, 1998, Cleveland Emergency Medical Services ("EMS") paramedics Thompson and Flores responded to a 911 dispatch to Bostic's home on Crestwood Avenue and, upon arrival, were told by Bostic's sixteen-year-old daughter that a man had struck her in the face. Although she complained of some pain, the paramedics noted no observable injuries but offered to take her to the hospital to document the attack, and she accepted. Bostic, then fifty-one years old, accompanied her daughter in the ambulance to nearby St. Luke's hospital, approximately a half mile from their home. Although there is some dispute over whether City policy required her to accompany her minor daughter in the ambulance, Bostic's presence was at least in accordance with the City's custom of allowing family members to accompany patients. Bostic and her daughter rode in the rear compartment, sitting on a bench seat parallel to the patient's stretcher or gurney area, and running lengthwise along the passenger side of the vehicle. She claimed she notified the paramedics that the seat belt on her side did not work, and that Flores responded that he was aware of that, but did nothing. Flores admitted he knew that both passenger's seat belts were inoperable before they got in the ambulance, but he was not sure whether he or anyone else had reported the problem to the City prior to the accident. Thompson claimed that he did not recall whether the seat belts were operable at the time, but stated that the City's ambulances "always have problems."
As Thompson drove the ambulance on Hulda Avenue at ten to fifteen miles per hour, he suddenly stopped to avoid hitting a dog and Bostic, sitting in the forward portion of the bench, was thrown from her seat. She struck her head and face on a cabinet, fell into the stairwell area used for entering the vehicle on the passenger side, and suffered injuries to her head, mouth, arm, and hip.
In an amended complaint, Bostic alleged that the paramedics' conduct was both negligent and reckless, that the City was liable under bothrespondeat superior theories and as a common carrier, and added a claim for declaratory judgment against the Ohio Department of Human Services ("DHS") concerning that agency's subrogation rights in any compensatory damages she might receive. The City moved for summary judgment on the basis that Thompson and Flores were responding to an emergency call at the time of Bostic's injury, R.C. 2744.02(B)(1)(c) exempted the City and the paramedics from liability for negligence under those conditions, and that the evidence was insufficient to show wanton or willful misconduct. Bostic responded that the paramedics determined that no emergency existed after arriving at her home so the transport was not part of an emergency call and, additionally, that the City was liable to her as a common carrier in any event. Bostic finally argued that a jury could reasonably conclude that the paramedics engaged in wanton misconduct when they knowingly allowed her to ride in an ambulance without working seat belts.
The judge granted summary judgment to the City and dismissed DHS's cross-claim because it was predicated on the City's liability.
Bostic's first assignment of error states:
 I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
We review the grant of summary judgment de novo, using the same standard as the trial judge.[1] Bostic argues that the City is liable for its employees' negligence under R.C. 2744.02(B)(1) and liable as a common carrier as defined in R.C. 4921.02, and that a jury reasonably could find the paramedics engaged in wanton or willful misconduct.
Bostic concedes that when the paramedics were dispatched to her home they had no duty to assess the urgent nature of the call and were responding to an emergency call when they arrived.[2] She claims, however, that once the paramedics were able to assess the situation subjectively and determine that her daughter did not require urgent or immediate assistance, the call ceased to be an emergency and the subsequent drive to the hospital was not the completion of an emergency call. We disagree
Although R.C. Chapter 4765 specifically governs the provision of emergency medical services, and R.C. 4765.49 grants immunity to paramedics and political subdivisions that goes beyond that granted in R.C. 2744.02, the City did not assert that affirmative defense of immunity under R.C. 4765.49, and thus has waived it.[3] Nevertheless, the fact that R.C. 4765.49(B) grants political subdivisions immunity for "any actions" taken by paramedics in the course of their employment unless willful or wanton misconduct is shown clarifies the language of "responding to or completing" an emergency call under R.C.2744.02(B)(1)(c). The broad grant of immunity in R.C. 4765.49(B) indicates that the phrase "responding to or completing" should also be construed broadly.
R.C. 2744.02(B)(1)(c) is intended to extend immunity based on the initial nature of the call, regardless of whether EMS personnel subsequently learn that immediate assistance is unnecessary. This conclusion is consistent with, and buttressed by, the broad grant of immunity in R.C. 4765.49(B); EMS personnel are customarily dispatched to locations, such dispatches ordinarily are considered emergency calls, and a general grant of immunity for negligence under R.C. 2744.02(B)(1)(c) that extends both to the response and return from such calls would approximate the scope of R.C. 4765.49(B). We expect the immunity in both statutes to be at least approximately equal, because the immunity of R.C. 4765.49(B) is extended to government contractors, and the legislation's apparent purpose is, inter alia, to ensure the same level of immunity for those contractors and their employees as is granted to direct government employees and political subdivisions performing the same functions. Therefore, even though the paramedics were able to determine that Bostic's daughter did not require immediate assistance their subsequent transport of Bostic and her daughter to the hospital nonetheless was part of an emergency call. We must consider the word "completing" to allow immunity for return trips to an ambulance's base or for transporting non-emergency patients, or the words "responding" and "completing" will not have different meanings. If immunity were intended only while the emergency was extant, there would be no need for the word "completing", because all applicable situations could be classified as "responding to" the emergency.[4] The paramedics were in the process of completing an emergency call at the time of Bostic's injury.
Bostic's common carrier liability argument also fails in light of the immunity granted in R.C. Chapter 2744. She asserts this claim to raise the standard of care to which she is entitled presupposing the City's lack of immunity. The argument is moot, because under R.C.2744.02(B)(1)(c), the common-carrier doctrine cannot be used to avoid this specific grant of immunity. Even if the City's EMS transportation system satisfies the statutory definition of a common carrier, as Bostic alleges, the application of immunity is not preempted. R.C. 2744.02(B)(1)(c) specifically applies to the City's EMS system and has primary application here.[5]
The final question is whether sufficient evidence exists to find that the paramedics' transport of Bostic in an ambulance they knew was without working seat belts constitutes wanton or willful misconduct. We find such evidence lacking because, even though the knowing disregard of safety considerations is a serious issue, the concept of wanton misconduct requires a showing that the paramedics failed "to exercise any care whatsoever * * * under circumstances in which there is great probability that harm will result * * *."[6] The term has also been defined to require "an entire absence of all care for the safety of others and an indifference to consequences."[7] Willful misconduct has been defined even more strictly, requiring "an actual intention to injure * * *."[8]
Although the paramedics were transporting Bostic in a vehicle without the benefits of seat belts, the anticipated trip was short and the ambulance was traveling at a low rate of speed. While the lack of working seat belts increased the risk of harm, the evidence is insufficient to find that it created a risk of great harm, that the risk was unreasonable, or that the paramedics exhibited an "absence of all care * * * and an indifference to consequences." We do not condone traveling without seat belts, nor do we countenance the failure to maintain working seat belts. We find only that, in these circumstances, the paramedics' transport of Bostic in an ambulance without working seat belts did not constitute wanton misconduct. The first assignment of error is overruled.
The second assignment states:
 II. THE TRIAL COURT ERRED WHEN IT DENIED THE PARTIES' STIPULATION THAT PLAINTIFF MAY AMEND THE COMPLAINT.
Bostic asserts that the judge wrongfully denied her the right to file an amended complaint by stipulation and, instead, required her to formally move to amend her complaint.[9] The record shows, however, that Bostic subsequently moved to amend, the motion was granted, and she has not explained how she was otherwise prejudiced by the alleged error. Because we find no prejudicial error,[10] this assignment is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM. J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Civ.R. 56(C); Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 130-31, 705 N.E.2d 717, 720.
[2] Agnew v. Porter (1970), 23 Ohio St.2d 18, 52 O.O.2d 79,260 N.E.2d 830, paragraph two of the syllabus.
[3] Turner v. Cent. Local School Dist. (1999), 85 Ohio St.3d 95,97, 706 N.E.2d 1261, 1263.
[4] Cf. R.C. 2744.02(B)(1)(a) [immunity extended to motor vehicle accidents where police officer was responding to, but not completing, emergency call].
[5] See R.C. 1.51; Bellian v. Bicron Corp. (1994), 69 Ohio St.3d 517,519, 634 N.E.2d 608, 610.
[6] Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243,363 N.E.2d 367, syllabus.
[7] Peoples v. Willoughby (1990), 70 Ohio App.3d 848, 851,592 N.E.2d 901, 903, quoting Tighe v. Diamond (1948), 149 Ohio St. 520,526-527, 37 O.O. 243, 80 N.E.2d 122, 126-127.
[8] Id.
[9] Civ.R. 15.
[10] App.R. 12(B).