OPINION
Plaintiffs-appellants David J. Vince, Individually and as Administrator of the Estate of David M. Vince, et al. appeal the Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendant-appellee the City of Canton.
 STATEMENT OF THE FACTS AND CASE
On June 9, 1995, David M. Vince was operating his new Honda motorcycle on Fulton Road in Canton, Ohio, when he lost control of the vehicle and crashed. David M. Vince died as a result of the injuries he sustained during the crash.
On April 11, 1996, appellants filed a complaint in the Stark County Court of Common Pleas against the City of Canton alleging that an agent of the City, a police officer in the Canton Police Department, negligently, recklessly, wilfully, and with great disregard for the safety of the decedent, engaged the decedent in a high speed pursuit which resulted in the fatal crash. The complaint further alleged that the City's officer negligently, wilfully, wantonly, and recklessly failed to operate his patrol car in a safe and reasonable manner during the pursuit.
On May 6, 1996, the City filed a timely answer to the complaint. Thereafter, the parties engaged in discovery. On February 7, 1997, the City filed a Motion for Summary Judgment. Via Judgment Entry dated July 31, 1997, the trial court granted the City's motion.
It is from this Judgment Entry appellants prosecute this appeal raising the following assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED SUMMARY JUDGMENT FOR THE APPELLEE WHERE THERE REMAINS A MATERIAL ISSUE OF FACT AS TO WHETHER THE APPELLEE'S AGENT WAS THE DIRECT AND PROXIMATE CAUSE OF DAVID M. VINCE'S DEATH.
 II. THE TRIAL COURT ABUSED ITS DISCRETION, WHEN IT GRANTED SUMMARY JUDGMENT FOR APPELLEE WHERE THERE REMAINS A MATERIAL ISSUE OF FACT AS TO WHETHER THE APPELLEE IS ENTITLED TO SOVEREIGN IMMUNITY.
 I
The following facts are necessary for our disposition of this appeal.
Between 7:30 and 8:00 p.m. on June 9, 1995, Patrolman Rodney K. Smith of the Canton Police Department observed a group of seven or eight motorcyclists traveling west on West Tuscarawas Avenue from the downtown Canton area. As the group cleared the intersection of West Tuscarawas and Cleveland Avenues, one cyclist, who was riding a bright florescent, crotch rocket style motorcycle, and was wearing a florescent colored helmet, accelerated and popped a wheelie. As the cyclists proceeded through the intersection of West Tuscarawas and McKinley Avenues, Patrolman Smith activated his emergency lights, which caused the group to speed off. The officer specifically pursued the cyclist who had popped the wheelie. The rider continued down West Tuscarawas Avenue at a high rate of speed, ignoring Patrolman Smith's signal to stop. The rider proceeded to the expressway, at which time the officer lost sight of him. Smith terminated the pursuit. During the chase, Smith was unable to obtain the license plate information of the motorcycle.
Thereafter, Smith resumed his normal patrol. Approximately one-half hour later, the officer observed two motorcycles, one of which Smith believed to be the vehicle from the previous incident. Smith activated his emergency lights and siren, and signaled for the cyclist to stop. However, the rider fled. Again, Patrolman Smith pursued the vehicle.
This time, Smith was able to obtain a license plate number. However, because the plate was a temporary tag, dispatch was unable to provide Smith with the name of the registered owner. The Can-Com supervisor advised Smith to terminate the pursuit if the cyclist did not stop immediately. Per this instruction, Smith terminated the chase.
Shortly thereafter, Smith observed a motorcycle traveling at a high rate of speed on Shorb Avenue. Again, Smith activated his emergency lights and siren, and pursued the vehicle. During the pursuit, the officer advised Can-Com that he was in pursuit of a motorcycle which he believed was the same one from the previous incidents. Again, the supervisor instructed Smith to terminate the pursuit if the cyclist did not immediately comply with his command to stop. During his deposition, Smith testified that upon receiving those instructions, he de-activated his lights and siren, stopped his vehicle for a moment to recollect his thoughts, and, thereafter, proceeded to patrol his enforcement area. As he traveled toward Interstate 77, Smith came across an accident. Upon viewing the accident scene, Smith realized the motorcycle involved was the same one he had pursued earlier that evening.
At approximately 9:45 p.m., David Brown and his family crossed Fulton Road, traveling east on 18th Street. He and his wife, who was in the front passenger seat, observed a motorcycle and a car traveling west on 18th Street at a high rate of speed. As Mr. Brown started to make a left-hand turn off of 18th Street onto Owens Court, he decided to stop and wait until the vehicles passed because of the speed at which the other vehicles were traveling. When the vehicles passed, Mr. and Mrs. Brown realized the motorcycle was being followed by a police car. According to Brown and his wife, the patrol car did not have its emergency lights or siren activated.
Thereafter, the couple heard the motorcycle attempting to slow down, followed by the screech of the police car's tires. Mr. Brown traveled side roads back to Fulton Road. Upon returning to Fulton Road, the Browns observed the police car, stopped near the intersection of 23rd Street and Fulton with its emergency lights activated. As the Browns approached the scene, the couple witnessed the motorcyclist lying on the ground with his motorcycle approximately 15 yards away from him.
Beth Buzille, who was working as a car hop at Woody's Root Beer Stand on Fulton Road on the night of the accident, heard a motorcycle come over the hill on Fulton. As she turned her attention to the sound of the vehicle, she observed a motorcycle driving north on Fulton at a very high rate of speed. Thereafter, she noticed the driver look over his shoulder. At that moment, the motorcycle was set off balance and the driver lost control. Buzille did not witness a police cruiser in pursuit of the motorcycle. She recalled that an officer arrived at the scene approximately 30 seconds after the accident occurred.
Phillip Sedlacko was patronizing Woody's Root Beer Stand on the evening of the accident. Sedlacko, who was an off-duty police officer with the Hills Dales Police Department, observed a motorcycle travel around the bend along Fulton Road at a high rate of speed. He noticed the driver was unable to control the cycle as it rounded the curve. Thereafter, Sedlacko observed the cycle veer to the right, hit a curb, and then go airborne. He did not observe a police cruiser in pursuit of the motorcycle. Sedlacko recalled that a police cruiser arrived approximately 30 to 40 seconds after the crash.
Any other pertinent facts will be contained in our discussion of appellants' assignments of error.
 I II
Appellants' assignments of error will be addressed together. In their first assignment of error, appellants argue the trial court abused its discretion by granting summary judgment in favor of the City as a material issue of fact remains as to whether Officer Smith was the proximate cause of David M. Vince's death. In their second assignment of error, appellants contend the trial court abused its discretion by granting summary judgment because a material issue of fact exists as to whether the City is protected under the doctrine of sovereign immunity.
Summary judgment motions are to be resolved in light of the dictates of Civ. R. 56 (C). Civ. R. 56 (C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280. It is based upon this standard that we review appellants' assignments of error
Under R.C. 2744.02(A)(1), the City enjoys a general immunity from civil liability:
 * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
However, the City may be held liable under R.C. 2744.02(B)(1) for the negligence of one of its employees in the operation of a motor vehicle within the scope of the employee's employment and authority. Notwithstanding the foregoing, the City is not liable under R.C. 2744.02(B)(1) if the alleged negligence occurred when one of its police officers was "operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute wilful or wanton misconduct." R.C.2744.02(B)(1)(a).
In its July 31, 1997 Judgment Entry, the trial court found appellants could not assert a successful claim for negligent operation of a motor vehicle because they were unable to prove Officer Smith proximately caused the decedent's death. The trial court further found, assuming arguendo, appellants could establish proximate cause, the City was protected from liability under the doctrine of sovereign immunity. Specifically, the trial court concluded Officer Smith was responding to an emergency call and the officer's pursuit of the decedent did not constitute wilful and wanton misconduct.
"Emergency call" is defined in R.C. 2744.01(A) as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." In their Brief in Opposition to Defendant's Motion for Summary Judgment and their Brief to this Court, appellants argue an emergency call must be limited to a situation which is "inherently dangerous". In rejecting appellant's argument, the trial court cited Moore v. Columbus
(1994), 98 Ohio App.3d 701. In Moore, the Franklin County Court of Appeals held "[t]here is no requirement in the statute which would limit an `emergency call' only to those occasions where there is an inherently dangerous situation or when human life is at danger." Id. at 706.
The Moore Court, in addressing this same argument, stated:
 Appellants are asking this court to define "emergency call" in such a way as to restrict it solely to "inherently dangerous situations," and to further define it as a situation where human life is threatened. However, appellants' interpretation of the statute serves to restrict the rather open-ended definition of "emergency call" as provided by the legislature. By focusing on the language "inherently dangerous situations" appellants have completely failed to comprehend that R.C. 2744.01(A) defines "emergency call" as "a call to duty including, but not limited to * * * police dispatches * * * of inherently dangerous situations that demand an immediate response on the part of a peace officer." As such, R.C. 2744.01(A) provides but one definition of an "emergency call" and that definition is the most obvious definition of what would constitute an "emergency call." Id.
We agree with the Moore court and find that an "emergency call" is not limited to an "inherently dangerous situation". However, that does not mean that we find all actions by a law enforcement officials to be "emergency calls". There are times when a police officer may be acting in the course of his or her duties and is not an on "emergency call". An officer may be required to act with immediacy even when a situation is not "inherently dangerous". As an example, a police officer may be driving from the scene of an accident to file an accident report. Under this situation, there is no need to drive in excess of the posted speed limit.
However, when a police officer is in the process of effectuating a stop or an arrest, whether it be for a traffic violation, misdemeanor criminal offense or felony criminal offense, to require an "inherently dangerous situation" to exist before sovereign immunity applies, for negligent acts, places an unnecessary chilling effect upon law enforcement's performance of its duties owed to the public. Further, even if we are incorrect in our interpretation of R.C. 2744.01(A), not to require an "inherently dangerous situation" to exist before immunity will attach, for a negligent act, by a police officer, we still find Appellee City of Canton is not potentially liable in this case. In the case sub judice, under any reasonable interpretation of the facts, we find the police officer was responding to an "inherently dangerous situation" and therefore on an "emergency call" and immunity attached to the police officer and his actions pursuant to that "emergency call", even if his actions were negligent.
Even under the summary judgment standard, appellants are unable to set forth facts upon which reasonable minds could differ as to whether "an inherently dangerous situation" existed. The decedent was traveling at an excessive and dangerous rate of speed and in a reckless manner. The record supports this conclusion. Further, the police officer pursued the decedent, on three separate occasions, in one evening, for the same dangerous driving. At no time, on any of the three occasions, did the decedent indicate that he intended to terminate the chase by stopping his motorcycle.
There is testimony that, at least once that evening, decedent did a "wheelie", that is, he drove the motorcycle, on the rear wheel, with the front wheel raised off the pavement, thereby leaving no steering mechanism to control the motorcycle. At any time, such conduct could have resulted in serious injury to other motorists or pedestrians. Failure, on the part of a police officer, to pursue an individual acting in such a manner could constitute neglect of a police officer's sworn duties to protect the public.
A police officer owes a general duty of protection to the public. Sawicki v. Village of Ottawa Hills (1988), 37 Ohio St.3d 222,230. Further, the General Assembly, in R.C. 4511.24, relieved emergency vehicles from speed limitations when responding to an emergency call but specifically provided:
 * * * This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway.
There is no evidence that, at the time of the accident, there was any physical contact between the decedent and the police officer nor even a physical proximity between the two vehicles. There is also no evidence that the police officer, during the chase, attempted to cut-off the decedent. The testimony merely establishes that the police officer actively pursued the decedent, in the course of his duties, to protect the safety of motorists and pedestrians. Based upon these facts, we find the police officer complied with his statutory duty as contained in R.C.4511.24, while responding to an emergency call.
In addition to finding that reasonable minds cannot differ as to whether an "inherently dangerous condition" existed, we further find that appellants' claims cannot survive summary judgment on the issue of proximate cause. Under no reasonable interpretation of the facts can the police officer be found to have been the proximate cause of the accident that took the decedent's life. In considering all the testimony, from the affidavits, in the light most favorable to appellants, at best, this testimony establishes that the police officer pursued the decedent, at a high rate of speed, and the decedent fled the scene and refused to stop even though he knew the police officer was in pursuit of him.
At the time of the accident, the police officer was thirty seconds behind the decedent, which translates into a significant distance behind the decedent. At only twenty-five miles per hour, the police officer was at least 1,100 feet behind the decedent and if traveling at fifty miles per hour, the police officer was in excess of 2,200 feet behind the decedent. These facts clearly establish that the police officer, although in pursuit of the decedent, was at such a distance that he did not proximately cause the decedent to crash his motorcycle.
Pertaining to the issue of duty, we find the decedent breached his legal duty to obey the traffic laws of the State of Ohio and the lawful directions of a police officer to stop his motorcycle. It is a criminal offense, under R.C. 2921.331 for a person to fail to comply with the order or signal of a police officer. R.C. 2921.331(B) specifically provides:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.
The decedent had a duty to exercise ordinary care for his own safety. Stone v. Ohio State Hwy. Patrol (Mar. 16, 1993),63 Ohio Misc.2d 351, 357, citing Sovich v. Ohio Dept.of Liquor Control (July 9, 1992), Court of Claims No. 91-06716, unreported. Certainly, decedent's breach of this duty was the more direct and proximate cause of his death as opposed to the police officer's pursuit of him.
Appellants further assert that even if there was an "inherently dangerous situation" resulting in immunity from negligent conduct to Appellee City of Canton, in this case, pursuant to R.C. 2744.02(B)(1), there would still be an existing cause of action for wanton and wilful conduct. We disagree.
Whether conduct is wilful or wanton is generally a question of fact. See, Fabry v. McDonald Police Dept. (1994), 70 Ohio St.3d 351,356; Peoples v. Wiloughby (1990), 70 Ohio App.3d 848,850; Reynolds v. Oakwood (1987), 38 Ohio App.3d 125, 127. "The term `willful and wanton misconduct' connotes behavior demonstrating a deliberate or reckless disregard for the safety of others." Moore at 708.
 "Wanton misconduct" comprehends an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care towards those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. It is not necessary that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct. * * * Wanton misconduct is positive in nature while mere negligence is naturally negative in character.
 * * * "Wilful misconduct" is something more than negligence. "Wilful misconduct" imports a more positive mental condition prompting an act than does the term "wanton misconduct." "Wilful misconduct" implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * * The word "wilful," used in the phrase, "wilful misconduct," implies intent, but the intention relates to the misconduct and not merely to the fact that some specific act, such as operating an automobile, was intentionally done. * * * The intention relates to the commission of wrongful conduct, independent of the intent to use certain means with which to carry out such conduct.
 In order that one may be guilty of "wilful misconduct," an actual intention to injure needs to be shown. * * * Peoples at 851. (Citation omitted.)
At oral argument, Appellee City of Canton conceded that pursuant to York v. Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143, Officer Smith was under a duty to refrain from operating his motor vehicle in a wilful and wanton manner. This duty extends not only to third persons, but also to persons being pursued by police vehicles.
Although statutorily a cause of action for wanton and wilful conduct pursuant to R.C. 2744.02(B)(1) exists, appellants failed to submit evidence sufficient to survive the standard of review at the summary judgment stage. The only conduct suggested, by the evidence, in a light most favorable to appellants, is that the police officer vigorously pursued the decedent, at a high rate of speed, and continued to do so after he was instructed to cease the pursuit.
There is no evidence that the police officer attempted to run the decedent off the road, followed at too close a distance causing the decedent to crash or acted in any way other than to follow the decedent. The police officer's conduct was not wilful and wanton. Further, the issue of proximate cause is even more remote than that in the analysis for a negligence cause of action as set forth above. Failure of the police officer to obey the instructions of his dispatcher to cease his pursuit may have been an issue for internal review by the police department. It in no way can be reasonably construed to be a "wilful and wanton" act as it relates to appellant's accident.
Appellants' first and second assignments of error are overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Reader, J., concurs.
Hoffman, P. J., dissents.